IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:07CV357-1-MU

JERRY JULIAN HINES,                    )
                                       )
            Petitioner,                )
                                       )
      v.                               )            **O R D E R**
                                       )
BUTCH JACKSON, Supt.,                  )
                                       )
            Respondent.                )
_____)

     **THIS MATTER** comes before the Court upon Respondent's Motion for Summary

Judgment(Doc. No. 4), filed December 27, 2007; Petitioner's Motion to Compel (Doc. No. 13),

filed October 2, 2008; and Petitioner's Motion for Partial Summary Judgment (Doc. No. 16),

filed March 23, 2009.

     For the reasons stated herein, and for the further reasons set forth in the Respondent's

Motion for Summary Judgment, the Respondent's Motion for Summary Judgment is granted.

Petitioner's Motion to Compel is denied and Petitioner's Motion for Partial Summary Judgment

is denied.  Petitioner's Petition for Writ of Habeas Corpus is dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

     On July 12, 2000, in the Superior Court of Rutherford County, Petitioner was convicted,

after a trial by jury, of first degree murder.  Petitioner was sentenced to life imprisonment without

parole.  Petitioner was initially represented by Michael Edney whose representation of Petitioner

ended prior to trial when his license was suspended.  The trial court then appointed Brian

Oglesby who was assisted by Robert Martelle who was not appointed by the court and who did

not receive compensation for his services.

Petitioner noticed an appeal of right to the North Carolina Court of Appeals. Brian Oglesby was appointed by the court to perfect the appeal. Petitioner filed a pro se motion asking the Superior Court to remove Mr. Oglesby. The court denied the motion but granted a subsequent motion by Mr. Oglesby seeking to withdraw. Mr. Edney then entered an appearance for Petitioner but failed to perfect the appeal. On motion from the State, and following a hearing, the Superior Court dismissed Petitioner's appeal.

On or about November 19, 2002, Petitioner filed a pro se motion for appropriate relief (MAR) in Superior Court. On May 7, 2002, Judge Guice stayed Petitioner's MAR and appointed the Appellate Defender to represent Petitioner in raising a petition for certiorari in the North Carolina Court of Appeals. On June 24, 2003, Petitioner, through counsel, filed a petition for writ of certiorari. On July 9, 2003, the court of appeals allowed the certiorari petition and reinstated Petitioner's appeal.

On October 19, 2003, the North Carolina Court of Appeals issued a unanimous, unpublished opinion finding no error in Petitioner's criminal judgment. State v. Hines, No. COA03-1637 (N.C. Ct. App. 2003). On November 2, 2004, Petitioner filed a writ of certiorari with the North Carolina Supreme Court which was denied on February 3, 2004. State v. Hines, 359 N.C. 284 (2004).

On April 18, 2005, Petitioner filed a second pro se motion for appropriate relief (MAR) in the Superior Court which was denied on June 7, 2005. On July 20, 2005, Petitioner filed a pro se petition for writ of certiorari in the North Carolina Court of Appeals. On August 11, 2005, the court of appeals vacated in part the order denying Petitioner's MAR and remanded the case to the

Superior Court for an evidentiary hearing on "whether defendant voluntarily waived his right to testify after being advised by his attorney of that right."

On December 8, 2006, the Honorable Laura Bridges, held a hearing at which Petitioner and his two trial attorneys, Mr. Oglesby and Mr. Martelle, testified. Following the hearing, Judge Bridges entered a detailed order ultimately concluding that, among other things, Petitioner had "voluntarily waived his right to testify." On July 11, 2007, Petitioner, through counsel, filed a petition for writ of certiorari in the court of appeals seeking review of Judge Bridges ruling. The North Carolina Court of Appeals denied the certiorari petition on July 23, 2007.

On or about August 22, 2007, Petitioner filed a third MAR in Superior Court which was dismissed on September 21, 2007. On October 22, 2007, Petitioner filed a petition for writ of certiorari in the court of appeals which was denied on October 26, 2007.

On November 13, 2007, Petitioner filed the instant federal habeas petition. In his federal habeas petition, Petitioner asserts that he received ineffective assistance of counsel; that insufficient evidence existed to support his conviction; and that there was prosecutorial misconduct during the prosecution of his case.

## ANALYSIS

### I. APPLICABLE LAW

The threshold inquiries for a federal court reviewing a federal habeas petition are whether the petitioner has exhausted his claims before the appropriate state courts and whether those claims are procedurally barred. 28 U.S.C. § 2254. In order to exhaust a claim a petitioner must have fairly presented it to the state courts. See Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000).

If a petitioner's claim is unexhausted, it may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court.  See id.  However, when the procedural bar that gives rise to exhaustion provides an independent and adequate state law ground for the conviction and sentence it prevents federal habeas review of the defaulted claim unless the petitioner can establish cause and prejudice for the default.  See id.

If a petitioner's claims are exhausted and not procedurally barred, the federal court must next examine whether or not the petitioner's claims were "adjudicated on the merits" by the state court.  If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in 28 U.S.C. § 2254(d) applies.  If a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits,[1] a federal court reviews questions of law and mixed questions of law and fact de novo.  Weeks v. Angelone, 176 F.3d 249, 258 (4th Cir. 1999).

The standard of review set forth in § 2254(d) is to be applied to "all claims 'adjudicated on the merits,' that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree."  Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999).  The standard of review is "quite deferential to the rulings of the state courts."  Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001).  State court decisions are to be given the benefit of the doubt.  Bell v. Cone, 543 U.S. 447, 455 (2005).  This deference extends

---

[1] If the state court has not ruled on the merits of a claim because it has expressly denied a habeas petitioner's claim based upon an independent and adequate state procedural rule such claim is considered procedurally defaulted in federal court.  See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998).

to summary dismissals.  Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000).  A habeas petitioner

bears the burden of establishing his claim.  Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002).

Pursuant to § 2254(d) a federal court may not grant a writ of habeas corpus unless the

state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court

of the United States; or (2) "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding . . . ."

28 U.S.C. § 2254(d)(1) and (2).

The Supreme Court has explained that a state court adjudication is "contrary" to clearly

established federal law, only if "the state court arrives at a conclusion opposite to that reached by

[the Supreme] Court on a question of law or if the state court decides a case differently than [the

Supreme] Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S.

362, 413 (2000).  An "unreasonable application" occurs when a state court correctly identifies the

correct governing legal principle from the Supreme Court's decisions but unreasonably applies

that principle to the facts of a petitioner's case.  Rompilla v. Beard, 545 U.S. 374 (2005)(citations

omitted).  An unreasonable application is different from an incorrect application of federal law,

the former being the requisite showing.  See Williams, 529 U.S. at 413; Schriro v. Landrigan,

127 S. Ct.  1933, 1939 (2007)("[t]he question under AEDPA is not whether a federal court

believes the state court's determination was incorrect but whether that determination was

unreasonable – a substantially higher burden.")  Therefore, this Court may not issue the writ even

if it concludes in its own independent review, that the relevant state court merely made an

incorrect or erroneous application of the correct federal principles.  Williams, 529 U.S. at 413.

When examining whether a state court's judgment "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in State court proceeding" a reviewing court must be mindful that a "determination of a factual issue made by a State court shall be presumed correct" unless a petitioner rebuts this presumption "by clear and convincing evidence."  28 U.S.C. § 2254(d)(2); 28 U.S.C. § 2254(e)(1); Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

### 1. Failure to Move for a Continuance to Further Investigate Alibi Defense

Petitioner alleges that his trial counsel were ineffective for failing to move for a continuance to further investigate information supporting his alibi defense. In support of his claim Petitioner alleges that the night before his trial began, a private investigator retained by his first trial attorney, Mr. Edney, and paid an additional fee by the attorney who was appointed to represent him at trial, Mr. Oglesby, submitted a report to counsel indicating there were witnesses, particularly Willow Miller and Jordan Miller, who could support his alibi defense.  Petitioner further alleges that Willow Miller informed him in letters that she was not amenable to subpoena because she had been threatened with prosecution if she did not stay away from Petitioner. Petitioner asserts that his counsel were ineffective for failing to show this report to the prosecutors and the trial judge and for not moving to continue the case to secure the attendance of these witnesses and to further investigate his alibi defense.

Petitioner raised this claim in his second MAR where it was summarily denied.  In denying his second MAR, the court stated "[t]he petitioner's claims are totally lacking in any merit."  The court also stated "[t]his court has reviewed the court file, parts of the trial transcript,

and the petitioner's lengthy motion along with any additional pages. The court finds the motion to be frivolous and without any support in fact or law." A summary dismissal is considered an adjudication on the merits sufficient to trigger § 2254(d)'s standard of review. See Bell v. Jarvis, 236 F.3d 149, 176 (4th Cir. 2000)(en banc). As set forth below, the state court's decision is correct and is not contrary to nor involved an unreasonable application of clearly established law as set forth by the United States Supreme Court. Nor is it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings.

_____The established Supreme Court precedent governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In Strickland, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby, that is, there is a reasonable probability that but for the error, the outcome would have been different. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; Fields v. Attorney General of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1995). Petitioner bears the burden of proving Strickland prejudice. Fields, 956 F.2d at 1297. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Id. at 1290. Moreover, trial counsel are given "wide latitude" to make "tactical decisions" regarding their clients' representation. Strickland, 466 U.S. at 689. To this end, counsel's "[s]trategic choices made after thorough investigation of law and facts relevant to plausible options is virtually unchallengeable." Id. at 690. "[T]he decision of what witnesses to call is a tactical one within the trial counsel's discretion." Minner v. Kerby, 30

7

F.3d 1311, 1317 (10th Cir. 1994.)

Petitioner alleges that his counsel should have asked for a continuance to further investigate his alibi defense. Specifically, Petitioner asserts that his counsel had information concerning two witnesses who should have testified at trial – his girlfriend, Willow Miller, and Jordan Miller, Petitioner's nephew's son. Petitioner asserts that these two witnesses could testify that he was home at the time of the murder.

Petitioner has failed to establish that his counsels actions were deficient. That is, counsel clearly investigated and presented an alibi defense. The investigator's report reflects that he was relaying information to counsel during the investigation and prior to the writing of the report. The report also reflects the very detailed investigation that this defense-ordered investigation undertook on Petitioner's behalf. Both witnesses cited to by Petitioner were investigated. Counsels' decision, based on the witnesses unavailability and the equivocal testimony as set forth in the report, not to seek to delay the trial and to present other alibi witnesses is a rational strategic decision.

Petitioner's claim also fails because he cannot establish that he was prejudiced. In support of his claim Petitioner references the investigator's report that he attached to his second MAR. This report, however, does not support a conclusion that Petitioner was prejudiced by his counsel's failure to move for a continuance. That is, the report indicates that, at best, Willow Miller was equivocal in her statement. Ms. Miller stated that she "doesn't remember the exact time she rolled over in bed to find [Petitioner] laying there . . . [i]t may have been as early as 6:15 AM or later around 6:35 AM. . . . She also said she cannot swear to the fact that [Petitioner] couldn't have snuck out of the house while she lay there sleeping." The report also indicates that

after an exhaustive search Jordan Miller could not be located. Petitioner provides no additional evidence as to what Jordan Miller would testify. As such, Petitioner has not carried his burden.

Moreover, the Court notes that Petitioner's counsel did call two witnesses in support of an alibi defense. First, his counsel called Mr. Staley, a neighbor, who testified that Petitioner's car was parked at his house at 6:24 the morning of the murder. Second, Petitioner's counsel called Charlie Miller, Petitioner's nephew, who testified that he arrived at Petitioner's house at about 6:20 the morning of the murder and Petitioner was just getting out of bed. Petitioner's counsel did investigate and present an alibi defense. The fact that the defense was unsuccessful does not render them ineffective. Because Petitioner cannot establish that the state court's ruling was contrary to or involved an unreasonable application of clearly established law as set forth by the United States Supreme Court, his claim on this basis fails.

## 2. **Failure to Inform Petitioner of His Right to Testify**

Petitioner also alleges that his trial counsel were ineffective for failing to inform him of his right to testify and for not allowing him to exercise that right.

Petitioner raised this claim in his second MAR where it was summarily denied. Thereafter, however, the North Carolina Court of Appeals vacated the second MAR order in part and remanded the matter for an evidentiary hearing to determine "whether defendant voluntarily waived his right to testify after being advised by his attorney of that right."

On December 8, 2006, Superior Court Judge Bridges presided over an evidentiary hearing at which Petitioner and his two trial attorneys, Mr. Oglesby and Mr. Martelle, testified. At the hearing, Petitioner testified that the only time he and his counsel discussed his testifying was the first day of trial. (Resp. Mot. Summ. J.; Ex. 29 at 8.) According to Petitioner, Mr. Oglesby

informed him only that he did not think it was wise for him to testify because the State did not have a strong case and because, if he testified, he would give the State an opportunity to raise issues hurtful to his case.  (Id.)  Petitioner testified that his attorneys did not discuss exactly what those issues might be.  (Id. at 9.)  Petitioner also testified that his attorneys did not explain the division of duties at a trial, meaning what decisions were his and what decisions were his attorneys.  (Id. at 12-13.)  Petitioner indicated that he thought the decision whether or not to testify was his attorneys' decision.  (Id. at 18.)

In addition, Petitioner stated that Mr. Oglesby gave him a notepad to use during trial to write down questions for the State's witnesses.  (Id. at 13.)  What remained of that notepad was introduced at the evidentiary hearing.  (Id. at 14; notebook pages attached to Ex. 19.)  On that notepad, in a section referencing the testimony of a witness testifying during the State's case-in-chief, Petitioner wrote down "let me go up," crossed that out, and wrote "I want to testify."(Id. at 16.)  Petitioner testified that he showed this to Mr. Oglesby, but they did not talk about it.  (Id. at 17.)  Petitioner further testified that he did not raise the issue of him testifying in front of the trial judge because his attorneys told him to sit there and be quiet.  (Id. at 19.)

The testimony of Petitioner's trial attorneys, Mr. Martelle and Mr. Oglesby, differed dramatically from that of Petitioner.  Mr.Martelle stated that he and Mr. Oglesby met for several hours with Petitioner, witnesses, and his family prior to trial. (Id. at 37-38.)  According to Mr. Martelle, the attorneys met with Petitioner for several hours on one occasion to discuss his prior criminal history and the problems it would cause if Petitioner testified. (Id. at 38.)  Mr. Martelle testified that he believed Petitioner understood that he had a right to testify, that he and Mr. Oglesby discussed that with Petitioner, that they gave Petitioner advise on the pros and cons of

testifying, that it was Petitioner's decision to agree or disagree, and that he and Mr. Oglesby did not force Petitioner either way.  (Id. at 41.)  Mr. Martelle further testified that he and Mr. Oglesby informed Petitioner that, if he did not testify, the jury would not hear about his prior criminal history.  (Id. at 38-39.)  It was revealed at the hearing that, similar to the case for which he was being prosecuted, Petitioner had previously shot and killed a man who was seeing one of his ex-girlfriends.  (Id. at 22, 38, & 52.)  Also, Petitioner had recently broken into his ex-wife's apartment, received probation for doing so, and was on probation at the time of the crime for which he was on trial.  (Id. at 38-39.)  According to Mr. Martelle, Petitioner agreed that he did not want the jury to hear his prior history and that he did not need to testify.  (Id. at 39.)  Mr. Martelle testified that Petitioner never told him at trial that he wanted to testify and that he did not see the notepad.  (Id.)

During his testimony, Mr. Oglesby agreed with Mr. Martelle's recollection of the meeting with Petitioner during which the attorneys discussed with Petitioner whether or not he should testify.  (Id. at 51.)  According to Mr. Oglesby, he told Petitioner that he would have an opportunity to testify if he wished to do so, but it was counsel's opinion that he should not, especially considering his prior criminal history.  (Id. at 51-53.)  Mr. Oglesby could not recall whether he saw Petitioner's notation on his notepad.  (Id. at 54-55.)  To Mr.Oglesby's knowledge, the issue of whether Petitioner would testify never arose at trial.  (Id. at 60.)

Mr. Oglesby testified that it was his practice to discuss the division of responsibilities between attorney and client with every defendant. (Id. at 61-62.)   Although he could not recall specifically discussing those responsibilities with Petitioner, he testified that, if he did not do so, Petitioner's was the only case in which he did not have that discussion. (Id. at 62.)

Following the hearing, Judge Bridges filed a written order concluding as a matter of law that Petitioner "is an intelligent individual with considerable contact with the legal system"; "actively contributed to the defense of his case"; "was advised of his right to testify by his attorneys"; "clearly understood the reasons he should not testify"; and "voluntarily waived his right to testify." (Resp. Mot. Summ. J., Ex. 18 at 2.)  In her order Judge Bridges made the several findings of fact in support of the above-noted legal conclusions. (Id. at 1-2.)  Most relevant to resolving the issues underlying Petitioner's present claim, Judge Bridges found as facts the following:

> 6. That Mr. Oglesby and Mr. Martelle met with [Petitioner] in the jail on many occasions to discuss his case, to inform him of his rights, and to obtain information as to witnesses.
>
> 7. That Mr. Oglesby and Mr. Martelle met with [Petitioner's] family and witnesses for many hours discussing their testimony and trial strategy.
>
> 8. That Mr. Oglesby and Mr. Martelle met with [Petitioner] in the jail for several hours the week before trial was to begin discussing with [Petitioner] his decision to plead not guilty, his right to testify and his ability to help in the defense of his case at which time the decision was made that [Petitioner] would not testify because his prior record would come into evidence, a prior record that would disclose his killing another person in another state under similar circumstances and the fact that he had been convicted recently and was on probation for being in his exwife's home in violation of a court order.
>
> 9. On the day of trial, [Petitioner] was given a note pad and pen by his attorneys and requested by them to write down any thoughts or suggestions he may have as they proceed from jury selection through the trial.
>
> 10. Seven pieces of paper were admitted into evidence as Exhibit #1 and identified as [Petitioner's] notes written during the trial; however, these were only part of the notes and not all of the notes written by [Petitioner] during the trial; that [Petitioner] stated some of the notes were lost during the past years.
>
> 11. [Petitioner's] notes appear to begin at jury selection at which point on what is believed to be the second page of notes, [Petitioner] wrote: "I believe I will have to take the stand." However, these words had been scratched out as though the decision had been made once again that he would not testify.
>
> 12. That [Petitioner] wrote at the end of the existing note that he would take the stand; however, these words were written some time during the testimony of Ben Lynch, during the middle of the State's evidence.

13. Mr. Martelle did not see the note written by [Petitioner] during the middle of the State's evidence.
14. Mr. Oglesby cannot remember seeing the note.
15. [Petitioner] appears to have vacillated throughout the trial as to whether he wanted to testify or not.
16. That before the end of the trial, Mr. Oglesby requested a period of time to consult with his client before proceeding; and after said consultation appeared before the court and rested the defendant's case.
17. That [Petitioner] never made a request of the Court to testify.
18. That [Petitioner's] criminal record would indicate a working knowledge of the legal system.
(Id. at 1-2.)

Because the state court adjudicated this claim on the merits, in order to prevail on federal habeas review, Petitioner must establish that the state court's ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Moreover, this Court presumes the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1). Petitioner may overcome this presumption by establishing by clear and convincing evidence that the factual findings are incorrect. 28 U.S.C. § 2254(e)(1).

When determining whether a state court unreasonably determined the facts, a federal habeas court must be mindful of the fact that state-court factual findings are presumed correct and a petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). A federal court can only grant habeas relief if the state court's credibility determinations were objectively unreasonable based upon the record. See Rice v. Collins, 546 U.S. 333, 341 (2006)(a state court factual determination is reasonable in light of the evidence presented in state court where '[r]easonable minds reviewing the record might disagree on the

factual finding.").  Petitioner has not presented clear and convincing evidence that contradicts the state court's finding of facts[2] and as such they are presumed to be correct in this Court.  28 U.S.C. § 2554(d)(1).

_____As previously stated, the established Supreme Court precedent governing ineffective assistance of counsel claims is <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984).   In <u>Strickland</u>, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby, that is, there is a reasonable probability that but for the error, the outcome would have been different.  In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance.  <u>Id.</u> at 689; <u>Fields v. Attorney General of Md.</u>, 956 F.2d 1290, 1297-99 (4th Cir. 1995).  Petitioner bears the burden of proving <u>Strickland</u> prejudice.  <u>Fields</u>, 956 F.2d at 1297.  If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." <u>Id.</u> at 1290.

Petitioner argues strenuously that the evidence at the MAR hearing do not support the conclusion that he waived his right to testify.  Petitioner's different interpretation of the facts is not sufficient to prevail on federal habeas review.   Under AEDPA a petitioner must establish not that  the "state court's determination was incorrect but whether that determination was unreasonable – a substantially higher burden."  <u>Schriro v. Landrigan</u>, 127 S. Ct.  1933, 1939

---

[2] Petitioner asserts in his filings that he had not been previously convicted of killing a boyfriend of an ex-wife.  Petitioner did not raise this fact when questioned about this topic at the state evidentiary hearing. (Resp. M. Summ. J., Ex. 29 pp. 22-23.)  Significantly, Petitioner does not assert that his counsel knew of this alleged fact.

(2007)   Indeed, this Court could disagree with the state court's interpretation and would still have to uphold his conviction.   Williams v. Taylor, 529 U.S. 362, 413 (2000)( a district court may not issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles). Petitioner has not met this burden.

Petitioner also focuses on his counsel's failure to request that the trial court inquire on the record as to Petitioner's desire to testify.   Petitioner cites to no, and this Court is unaware of, any Supreme Court precedent establishing that a trial court has an affirmative duty to advise a defendant of his right to testify.  See United States v McMeans, 927 F.2d 162, 163 (4th Cir. 1991)("The United States Supreme Court has not decided whether there is an affirmative duty of a trial court to advise the defendant of [the right to testify].").  In addition, Petitioner cites to no, and this Court is unaware of any, Supreme Court precedent indicating that trial counsel has an affirmative duty to request an inquiry by the trial court.

Based upon the facts, as found by the state court, this Court concludes that Petitioner has failed to establish that his counsel were deficient or even that he was prejudiced.   Because Petitioner cannot establish that the state court's ruling was contrary to or involved an unreasonable application of clearly established law as set forth by the United States Supreme Court, his claim on this bass fails.

### 3.  **Failure to Strike ADD Juror**

Petitioner alleges that his trial counsel were ineffective for failing to strike a juror who admitted to suffering from Attention Deficit Disorder (ADD).

Petitioner raised this claim in his second MAR where it was summarily denied.  In

15

denying his second MAR, the court stated "[t]he petitioner's claims are totally lacking in any merit." The court also stated "[t]his court has reviewed the court file, parts of the trial transcript, and the petitioner's lengthy motion along with any additional pages. The court finds the motion to be frivolous and without any support in fact or law." A summary dismissal is considered an adjudication on the merits sufficient to trigger § 2254(d)'s standard of review. See Bell v. Jarvis, 236 F.3d 149, 176 (4th Cir. 2000)(en banc). As set forth below, the state court's decision is correct and is not contrary to nor involved an unreasonable application of clearly established law as set forth by the United States Supreme Court. Nor is it based on an unreasonable determination of facts in light of the evidence presented in the state court proceedings.

Again, the established Supreme Court precedent governing ineffective assistance of counsel claims is Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In Strickland, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby, that is, there is a reasonable probability that but for the error, the outcome would have been different. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; Fields v. Attorney General of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1995). Petitioner bears the burden of proving Strickland prejudice. Fields, 956 F.2d at 1297. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Id. at 1290.

Trial counsel are given "wide latitude" to make "tactical decisions" regarding their client's representation. Strickland, 466 U.S. at 689. Juror selection is a quintessential strategic

choice.  Petitioner gives no more reason that this juror should have been stricken than the fact that she was diagnosed as having ADD.  Such a condition does not automatically preclude an individual from jury duty.  Indeed, this particular juror stated on the record that her condition would not bother her, that it might be annoying to others because of her fidgeting, and that she understood that the judge would allow breaks as needed.  Again, Petitioner does not set forth how, specifically, he was prejudiced by this individual's service on the jury.   Consequently, his claim fails.

### 4. Failure to Turn Over Records

Petitioner alleges that his first retained appellate counsel, Mr. Edney, was ineffective for failing to turn over trial records to the appellate counsel who ultimately represented him on appeal, Ms. Allen.  More specifically, Petitioner alleges that Mr. Edney did not turn over to Ms. Allen records and other documents necessary to prepare the insufficiency of the evidence claim she raised on direct appeal.

Petitioner raised this claim in his second MAR where it was summarily denied.   In denying his second MAR, the court stated "[t]he petitioner's claims are totally lacking in any merit."  The court also stated "[t]his court has reviewed the court file, parts of the trial transcript, and the petitioner's lengthy motion along with any additional pages.  The court finds the motion to be frivolous and without any support in fact or law."   A summary dismissal is considered an adjudication on the merits sufficient to trigger § 2254(d)'s standard of review.  See Bell v. Jarvis, 236 F.3d 149, 176 (4th Cir. 2000)(en banc).  As set forth below, the state court's decision is correct and is not contrary to nor involved an unreasonable application of clearly established law as set forth by the United States Supreme Court.  Nor is it based on an unreasonable

determination of facts in light of the evidence presented in the state court proceedings.

Again, the established Supreme Court precedent governing ineffective assistance of counsel claims is <u>Strickland v. Washington</u>, 466 U.S. 668, 687-91 (1984). In <u>Strickland</u>, the Supreme Court held that in order to succeed on an ineffective assistance of counsel claim, a petitioner must establish that counsel's performance was constitutionally defective to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby, that is, there is a reasonable probability that but for the error, the outcome would have been different. In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. <u>Id.</u> at 689; <u>Fields v. Attorney General of Md.</u>, 956 F.2d 1290, 1297-99 (4ᵗʰ Cir. 1995). Petitioner bears the burden of proving <u>Strickland</u> prejudice. <u>Fields</u>, 956 F.2d at 1297. If the petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." <u>Id.</u> at 1290.

Petitioner's claim fails because, at a minimum, he cannot establish that he was prejudiced. That is, Petitioner does not even identify what precise documents should have but were not turned over and, even more importantly, does not demonstrate how, if these documents had been turned over, a reasonable probability exists that the outcome would have been different – that is he would have prevailed on appeal. Indeed, the Court notes that the appellate court must decide a case solely on the record before it.

## III. INSUFFICIENT EVIDENCE

Petitioner also alleges that there was insufficient evidence to convict him of first degree murder.

Petitioner raised this claim on direct appeal where it was rejected. In denying Petitioner's

insufficiency of the evidence claim the court of appeals held:

> The present defendant's reliance on <u>Chapman</u> is misplaced, as the evidence in the instant case is far more substantial. The present defendant told a number of people of his intentions to kill Lord. His alarm clock was set to sound at a very early hour he morning of the killing. A person familiar with defendant spotted a vehicle that defendant sometimes drove traveling the most direct route between the crime scene and defendant's home approximately ten minutes after the murder; investigators determined that it takes approximately ten minutes to travel from the crime scene to the intersection where the vehicle was spotted. After defendant reported to work on the morning of the crime, he called his girlfriend and asked her to wash a single item of clothing, a jump suit. A shotgun, which investigators determined could have been used to perpetrate the murder, was found in the shallow water beneath a bridge on the most direct path between the crime scene and defendant's house. The shotgun, which had been fired recently, had a distinguishing feature: a red but. A gun dealer had sold the exact same type of shotgun with a red butt to defendant prior to the murder; the gun trader had never seen another gun with a red butt like the one he sold to defendant. This evidence, cast in the light most favorable to the State, permits an inference that defendant was the perpetrator of the victim's murder. As such, the trial court properly denied defendant's motion to dismiss. This assignment of error is overruled.

<u>State v. Hines</u>, 166 N. C. App. 76, * 3 (Oct. 19, 2004).

Because the state court adjudicated this claim on the merits, in order to prevail on federal habeas review, Petitioner must establish that the state court's ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

In <u>Jackson</u>, the Supreme Court held that when reviewing a claim of insufficiency of the evidence, a court must consider whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." Id. at 324; see also Wright v. West, 505 U.S. 277 (1992)(same).

In support of his claim Petitioner points to testimony presented in his defense at trial indicating that he was home at the time of the murder. Petitioner also notes that the only evidence linking him to the crime was the testimony of his probation officer who saw a car like his girlfriends traveling near the scene.

Merely presenting conflicting testimony does not establish that the evidence on that point was insufficient – in reaching its verdict the jury weighed the credibility of the inconsistent testimony and determined who was more credible. Petitioner's contention that the only evidence that linked him to the crime was his probation officer's testimony is simply false. In reaching this conclusion, the North Carolina Court of Appeals cited to numerous pieces of evidence presented at trial which supported a finding beyond a reasonable doubt that Petitioner was the perpetrator of the murder. Circumstantial evidence must be considered when evaluating an insufficiency of the evidence claim. United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). When considered in its totality the evidence presented at trial, albeit mostly circumstantial, was more than sufficient to support Petitioner's' murder conviction.

After reviewing all the evidence in the light most favorable to the prosecution, this Court does not find that the state court decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent. Likewise, Petitioner does not assert and this Court does not find that the state court ruling was based on an unreasonable determination of facts, in light of the evidence presented in state court proceedings.

## IV. PROSECUTORIAL MISCONDUCT

Petitioner alleges that there was prosecutorial misconduct based upon the prosecutor's

questioning during jury selection and based upon the prosecutor's comments during trial and

closing arguments.

Petitioner raised this claim on direct appeal where it was denied.  In denying Petitioner's

prosecutorial misconduct claim, the state appellate court ruled as follows:

> Defendant also argues on appeal that he is entitled to a new trial because the prosecutor engaged in prosecutorial misconduct. In his brief, defendant asserts three instances of alleged misconduct.
>
> First, defendant argues that the prosecutor impermissibly asked a juror if she could find guilt beyond a reasonable doubt in the absence of an eyewitness to the murder. Defendant asserts that, in so doing, the prosecutor impermissible "staked out" the jury.
>
> "The trial court has a great deal of discretion in monitoring the propriety of questions asked by counsel during voir dire, and the standard of review ... is whether the trial court abused its discretion and whether that abuse resulted in harmful prejudice to defendant." State v. Henderson, 155 N.C.App. 719, 725-26, 574 S.E.2d 700, 705, disc. review denied, appeal dismissed, 357 N.C. 64, 579 S.E.2d 569 (2003). The trial court " 'should not permit counsel to question prospective jurors as to the kind of verdict they would render, or how they would be inclined to vote, under a given state of facts.' " Id. (quoting State v. Vinson, 287 N.C.326, 336, 215 S.E.2d 60, 68 (1975), vacated in part, 428 U.S. 902, 49 L.Ed.2d 1206 (1976)). However, "[q]uestions designed to measure a prospective juror's ability to follow the law are proper within the context of jury selection voir dire." State v. Jones, 347 N.C. 193, 203, 491 S.E.2d 641, 647 (1997). This court has held that a trial court did not abuse its discretion by permitting a prosecutor to ask jurors whether an eyewitness identification "in and of itself" necessarily would be insufficient for them to return a verdict of guilty. State v. Roberts, 135 N.C. App. 690, 697, 522 S.E.2d 130, 134 (1999).
>
> In the instant case, the prosecutor inquired as to whether a verdict of guilty could be returned in the absence of an eyewitness to the killing. This inquiry is similar to the one upheld in Roberts, and we discern no abuse of discretion by the trial court where it declined to intervene, without objection by defendant, to correct the alleged error.
>
> Second, defendant urges that the prosecutor impermissibly asserted a personal opinion as to the credibility of defendant's

probation officer, Benjamin Lynch, by making the following comment: "Ben Lynch is not going to come in here and tell you something that's not true.... Ben Lynch is not going to risk his reputation and his credibility on this case...."

" 'Counsel are afforded wide latitude in arguing hotly contested cases, and the scope of this latitude lies within the sound discretion of the trial court.' " State v. Holden, 346 N.C. 404, 429-30, 488 S.E.2d 514, 527-28 (1997) (quoting State v.Gregory, 340 N.C. 365, 424, 459 S.E.2d 638, 672 (1995)). "Counsel may not, however, place before the jury incompetent and prejudicial matter by expressing personal knowledge, beliefs, and opinions not supported by evidence. Upon objection, the trial court has the duty to censor remarks not warranted by the evidence or law and may, in cases of gross impropriety, properly intervene ex mero motu." State v. Anderson, 322 N.C. 22, 37, 366 S.E.2d 459, 468 (1988) (citations omitted). "In cases where the defendant failed to object at trial, the impropriety of the argument must be gross indeed in order for [an appellate court] to hold that a trial judge abused his discretion in not recognizing and correcting ex mero motu an argument which defense counsel apparently did not believe was prejudicial when he heard it." Holden, 346 N.C. at 430, 488 S.E.2d at 528 (citation and internal quotation marks omitted).

In the instant case, the prosecutor merely argued that one of the State's witnesses was a credible witness whom the jury should believe. We find nothing improper about this argument. See State v. Zuniga, 320 N.C. 233, 256, 357 S.E.2d 898, 913 (1987).

Third, defendant contends that the prosecutor improperly stated that the defense's strategy of questioning police tactics and workmanship "may work in some famous case out in California" but that he had "a little more faith in a Rutherford County jury." Defendant did not object to this comment, and we conclude that, assuming arguendo that this statement was improper, it was not so grossly improper that the trial court abused its discretion by declining to intervene ex mero motu. These assignments of error are overruled.

State v. Hines, 166 N.C. App. 761 ( 2004).

Because the state court of appeals adjudicated this claim on the merits, in order to prevail

on federal habeas review,  Petitioner must establish that the state court's ruling resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established

Supreme Court precedent or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

With regard to Petitioner's claim that the prosecutor's questioning during jury selection was improper, it is well-established that jury selection is within the sound discretion of the trial court. Morgan v. Illinois, 504 U.S. 719, 729 (1992). To establish prosecutorial misconduct, a petitioner must prove that the trial court's failure to exercise its discretion and exclude certain questions asked by the state rendered the defendant's trial "fundamentally unfair." Morgan, 504 U.S. at 730 n.5(quoting Mu'Min v. Virginia, 500 U.S. 415, 425-26 (1991)).

With regard to Petitioner's claim that the prosecutor's comments during trial and closing argument were erroneous, Petitioner must establish that the prosecutor's comments or arguments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Duncan v. Wainwright, 477 U.S. 168, 181 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).

A review of the record leads this Court to conclude that Petitioner has not established that the North Carolina Court of Appeals' ruling was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. See Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)("[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.") Consequently, this claim is dismissed.

**V. PETITIONER'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

Petitioner has filed a motion requesting that the Court grant him a partial summary judgment.  For the reasons already set forth herein, Petitioner's motion is denied.

## VI.  PETITIONER'S MOTION TO COMPEL DISCOVERY

Pursuant to Rule 6(a) of the Rules Governing § 2254 Cases, a prisoner must seek leave of court and demonstrate good cause before he is entitled to any form of discovery in a federal habeas corpus proceeding.  Discovery is extremely limited in federal habeas proceedings.  See Bracy v. Gramley, 520 U.S. 899, 902-06 (1997).  Furthermore, "it is clear that there was no intention to extend to habeas corpus, as a matter of right, the broad discovery provisions . . . of the new [Federal Rules of Civil Procedure]."  Harris v. Nelson, 394 U.S. 286, 295 (1969).  "Rule 6 does not 'sanction fishing expeditions based on a petitioner's conclusory allegations.' 'Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations of fact."  See Williams v. Bagley, 380 F.3d 932, 974 (6th Cir. 2004)(citations omitted).  A federal habeas petitioner establishes the requisite good cause for discovery "where specific allegations before the court show reason to believe that petitioner may, if the facts are fully developed, be able to demonstrate that he is . . .  entitled to relief."  Bracy, 520 U.S. at 908-09 (quoting Harris v. Nelson, 394 U.S. 286, 295 (1969)).  Petitioner has not met this standard and his motion is denied.

**THEREFORE, IT IS HEREBY ORDERED** that:

1. Respondent's Motion for Summary Judgment is **GRANTED**;

2. Petitioner's Motion to Compel is **DENIED**;

3. Petitioner's Motion for Partial Summary Judgment is **DENIED**; and

4. Petitioner's Petition Under 28 U.S.C. § 2254 is **DISMISSED.**

Signed: June 22, 2009

Graham C. Mullen
United States District Judge